The People of the State of New York, Plaintiff, *v.* Martin V. B. Williams, Defendant.

County Court, Otsego County, April 13, 1931.

*Donald H. Grant, District Attorney,* for the People.

*Urban C. Lyons,* for the defendant.

*Dennis J. Kilkenny,* representing the complainants, and recognized as *amicus curiæ.*

VAN WOERT, J. At the November, 1930, term of the Supreme Court the Otsego county grand jury presented four indictments against Martin V. B. Williams, this defendant, charging him with grand larceny in the first degree by way of certain alleged false pretenses whereby in the early part of the year 1929, as is charged, he intentionally defrauded the complainants of their property by inducing them to invest in the shares of a certain now defunct corporation. Such indictments were sent down to this court for disposition and pleas of not guilty entered by the defendant. The district attorney moved for trial of the same upon April 10, 1931, at the jury term.

The complainants, Harry M. Eakeley, Willis D. Butler, Mrs. Belle Dougherty and Ralph K. Searles, were in attendance and have presented a formal petition requesting that there be no prosecution herein and that the indictments be dismissed.

A review of the situation has been made, including careful scrutiny of the proceedings before the grand jury. No fault is to be found with the regularity of formation or action of that body. The evidence before it, adduced by the district attorney and provided by the complainants or their witnesses, meets all the recognized necessities, and the indictments themselves are singularly explicit and detailed, going well beyond the scant requirements of our present statutes. It is accordingly very plain that the only refuge left is an inquiry under section 671 of the Code of Criminal Procedure (as amd. by Laws of 1927, chap. 596) which provides, in part: "The court may, either of its own motion, or upon the application of the district attorney, and in furtherance of justice, order an action, after indictment, to be dismissed."

The permission to act "in furtherance of justice" in so important a matter as overriding a grand jury presentment opens to any judicial officer a broad field for exercise of discretion. Use of such power calls for extreme deliberation. The honest labors of a grand jury and district attorney, both of whose efforts are within the prescriptions of a solemnly sworn duty, should not be set aside lightly. A mere "change of mind" on the part of complainants may not be considered sufficient cause for setting aside so serious a charge of crimes as is here brought forward. The sincerity and good faith of the complainants is to be demonstrated beyond doubt and the soundness of their reasons for a change of front established to complete satisfaction. The court, too, may well insist upon ample fortification, for the Legislature, not unwisely, in 1927 added this injunction in amending section 671: "In such case a written statement of the reasons therefor shall be made by the court and filed as a public record." (Laws of 1927, chap. 596.) The com-

plaintants themselves set in motion the machinery of justice in Otsego county; it has functioned fairly and adequately; the position they now assume should possess outstanding merit in order to arrest the progress of that respectable mechanism.

In asking the court " in furtherance of justice " to stop any further prosecution upon these proper indictments the complainants by their petition, strengthened we must note by their personal appearance and affirmation upon personal questioning by the court, represent that they are well satisfied of these pertinent and material facts: (1) That the defendant Williams later lost his own money in transactions in the stock which he had recommended them to purchase; (2) that said Williams " received no profit, compensation or reward " from the complainants' investments which were induced by his recommendations; (3) that they are convinced that the defendant acted in good faith and believed his representations to be founded upon sound fact; (4) that Williams did not intend to cheat or defraud them or to steal the money with which they parted in reliance upon his recommendations; and (5) that the representations made to them by Williams were the relation of facts and representations made to him by others which he himself believed to be true but which were in fact wholly false.

Questioning by the court elicited the fact, severally affirmed by the complainants, that neither of them had received any promise of any kind from any source that they would receive return of their money or any reward for their present recantation. They are known to the court as responsible and conscientious persons. A little late, perhaps, they now take their loss philosophically and their good faith is beyond question.

The district attorney advises that investigation indicates Williams did not profit in these transactions, that the complainants' money cannot be traced into his possession, and that defendant lost $1,000 of his own property in these ventures. He also concedes that Williams is a man of high character for honesty, sixty-seven years of age, thirty-eight years of which have been devoted to service as a minister of the gospel in a recognized church, and that there is no doubt that upon a trial of the indictments the highest kind of " good reputation for honesty " testimony would be produced.

Upon a charge of this kind an essential element to be established by the prosecution is a deliberate " intent to defraud." And it is almost trite and academic to repeat that upon the whole proof in any criminal case the defendant's guilt must be established " beyond a reasonable doubt."

It seems to us that at the very least a most substantial uncertainty

would be presented to any trial jury upon the question of intent to defraud and that this serious consideration could but ripen into an honest acquittal upon proper instruction by the court that in a close case " evidence of good character may of itself create a reasonable doubt where otherwise no reasonable doubt would exist." (*People* v. *Jackson*, 182 N. Y. 66.) It is almost inconceivable that a jury would not discharge the defendant under such circumstances. A defendant should not be put to the expense, uncertainty and jeopardy of trial in such a situation.

The indictments were wholly proper, but later events and discoveries have sufficiently demonstrated the injustice of further prosecution, particularly when the prosecuting officer does not oppose these conscientious complainants in their request for an abatement of action. The court should intervene and put a stop to further prosecution when well convinced that nought but gratuitous distress may follow.

The defendant's error is to be found, it seems, in deviating from strict adherence to his high calling and wandering into the foreign field of speculative finance. The unwary of his flock, for whom he was otherwise a most worthy shepherd, it seems, followed his lead into fields strange to all of them. He was sincere, but a poor guide outside of his chosen inclosure; foolishly over-enthusiastic, he became the tool of unscrupulous adventurers, but not a criminal. As the district attorney suggests, he accomplished much good, but unwittingly he did much harm.

At the culmination of an honorable career of thirty-eight years in the ministry, during which some thousands of converts to his faith have been procured, he has been subjected to the ignominy of incarceration in the common jail of Otsego county following proper arrest upon a bench warrant. For his unfortunate and costly mistake he has already suffered an extreme penalty, even though innocent of criminal default.

We cannot be blind to these considerations, and believe that dismissal is proper. The indictments are ordered dismissed, and the clerk will enter such direction upon the minutes and file this memorandum in compliance with section 671 of the Code of Criminal Procedure.

Indictments dismissed, defendant discharged, and bail exonerated.